UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| MOHAMED A. SAID,<br><br>                    Plaintiff,<br><br>    vs.<br><br>UNITED STATES SMALL BUSINESS<br>ADMINISTRATION,<br><br>                    Defendant. | Case No.<br><br>**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**<br><br>**JURY TRIAL DEMANDED** |

## I.    NATURE OF ACTION

1.    Plaintiff Mohamed Said is a small business owner who was denied a COVID-19 Economic Injury Disaster Loan ("EIDL") because the United States Small Business Administration ("SBA") erroneously determined that he was a terrorist listed on the Office of Foreign Asset Control's ("OFAC") sanctions list.

2.    Mr. Said applied for an EIDL to support his rideshare business during the pandemic and was approved to receive a loan of $82,000. Shortly after signing the loan agreement, however, Mr. Said received a letter from the SBA rescinding its approval, stating that Mr. Said was ineligible to receive EIDL funds because he purportedly appeared on a federal Do Not Pay ("DNP") list. The letter did not identify the DNP list Mr. Said was on or explain how the SBA reached its conclusion.

3.    After standing by its determination for months despite substantial evidence submitted by Mr. Said that he was not the same "Mohamed Said" on the OFAC sanctions list, the SBA admitted it had been wrong, that Mr. Said was not on the OFAC sanctions list, and that

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF - 1

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1   its error resulted in the denial of Mr. Said's loan application. By that time, the EIDL program had

2   run out of funds and he was unable to obtain the loan he was eligible to receive.

3       4.      The SBA's erroneous determination that Mr. Said was ineligible was the result of

4   its failure to run proper searches or implement review processes to determine whether an

5   applicant flagged as potentially ineligible for federal loans is actually ineligible.

6       5.      When a business applied for an EIDL loan, SBA ran the applicant's first and last

7   name, without any other identifying information in the search, against dozens of federal DNP

8   lists. This led to erroneous determinations that an applicant was ineligible for a loan simply

9   because the applicant shared a name with a person listed on one or more DNP lists.

10      6.      SBA knew that using name-only searches would return false-positive hits and

11  that additional review would be necessary to determine eligibility but did nothing to implement

12  policies and procedures to eliminate the risk of erroneous ineligibility determinations.

13      7.      The SBA's practice has a disproportionate impact on people of Middle Eastern

14  and North African descent like Mr. Said because their names may reflect their national origins.

15      8.      As such, the SBA's reliance on name-only DNP searches to determine EIDL

16  eligibility violates the Equal Credit Opportunity Act's ("ECOA") prohibition of national-origin

17  discrimination in credit transactions. 15 U.S.C. § 1691(a)(1).

18      9.      And the SBA's failure to provide any meaningful explanation of why Mr. Said's

19  approval was rescinded violates the ECOA's requirement that a creditor denying an application

20  for credit clearly state its reasons for doing so in writing. 15 U.S.C. § 1691(d)(2).

21                          **II.    JURISDICTION AND VENUE**

22      10.     This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331

23  because a federal question is present.

24      11.     The Court also has jurisdiction over Plaintiff's claims pursuant to 15 U.S.C.

25  § 1691e(c).

26

27

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1    12.    Venue is proper in the Seattle Division of the Western District of Washington

2 pursuant to 28 U.S.C. § 1391 and Local Civil Rule 3(e)(1). Defendant is subject to personal

3 jurisdiction in this district, and a substantial part of the events or omissions giving rise to the

4 claims occurred in King County, Washington.

5                                    **III.    PARTIES**

6    13.    Plaintiff Mohamed Said is a citizen of Washington State, residing in King County

7 Washington.

8    14.    Defendant SBA is a federal agency. It is a citizen of Washington, D.C. The SBA is a

9 "creditor" as defined by the ECOA because it is a person who regularly extends, renews, or

10 continues credit in the ordinary course of business. 15 U.S.C. § 1691a(e); 12 C.F.R. § 1002.2(l).

11 The Act explicitly states that a "person" under the Act includes a "government or governmental

12 subdivision or agency." 15 U.S.C. § 1691a(f). *See also Garcia v. Johanns*, 444 F.3d 625, 629 n.4

13 (D.C. Cir. 2006) ("ECOA creates a private right of action against a creditor, including the United

14 States").

15                            **IV.    FACTUAL ALLEGATIONS**

16 **A.    Federal law prohibits discrimination in the provision of credit.**

17    15.    Congress originally enacted the ECOA in 1974 to combat discrimination against

18 women in credit transactions.

19    16.    Amended over the years, the ECOA also prohibits, *inter alia*, discrimination on

20 the basis of race, color, religion, or national origin in the provision of credit. 15 U.S.C. §

21 1691(a)(1).

22    17.    The ECOA also requires creditors provide a statement of reasons, in writing, for

23 any adverse action taken on an applicant's credit application within 30 days of the adverse

24 action. 15 U.S.C. § 1691(d)(1)–(3). The statement of reasons for adverse action must be specific

25 and indicate the principal reason for the adverse action; reference to internal standards or

26 policies is generally insufficient. 12 C.F.R. § 1002.9(b)(2).

27

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF - 3

18.    The purpose of the ECOA's dual anti-discrimination and notice provisions is to ensure that credit is equally available to all credit-worthy consumers. *Brothers v. First Leasing*, 724 F.2d 789, 794 (9th Cir. 1984) ("The ECOA is simply one more tool to be used in our vigorous national effort to eradicate invidious discrimination 'root and branch' from our society."); *Fischl v. Gen. Motors Acceptance Corp.*, 708 F.2d 143, 146 (5th Cir. 1983) (the notice requirement is "'a strong and necessary adjunct to the antidiscrimination purpose of [the ECOA], for only if creditors know they must explain their decisions will they effectively be discouraged from discriminatory practices'") (quoting S. Rep. No. 94-589, 94th Congress, 2d Sess. (1976)).

19.    The notice requirement is also intended to provide consumers with a "valuable educational benefit" and to allow for the correction of errors "where the creditor may have acted on misinformation or inadequate information." *Tyson v. Sterling Rental, Inc.*, 836 F. 3d 571, 576 (6th Cir. 2016) (quoting S. Rep. No. 94-589 at 4).

20.    The ECOA provides borrowers and credit applicants with a private cause of action, either in their individual capacity or as a member of a class. 15 U.S.C. § 1691e(a).

21.    The ECOA authorizes the Consumer Financial Protection Bureau to issue regulations to carry out the ECOA's purposes. 15 U.S.C. § 1691b(a). The CFBP has issued regulations that are collectively known as Regulation B. 12 C.F.R. § 1002.1(a).

**B.    The COVID-19 Economic Injury Disaster Loan program.**

22.    The COVID EIDL program was created to help businesses cope with the fallout of the COVID-19 pandemic.

23.    The SBA provided two types of funding under the COVID EIDL program: COVID EIDL loans, and EIDL Advance funds, which operated as grants.

24.    COVID EIDL loans came directly from the SBA, and were low-interest, fixed rate, long-term loans. Payments on the loans were also deferred for the first two years.

25.    EIDL loans were designed to help overcome the effects of the pandemic by providing business owners with working capital to meet operating expenses. The proceeds of

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF - 4

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

the loan could be used to make payments towards payroll, rent, mortgage, utilities, other ordinary business expenses, and business debts.

26.     The first EIDL loans and advances were disbursed in April 2020. Both the Trump and Biden Administrations extended and expanded funding for the SBA's COVID-relief programs.

27.     The SBA stopped accepting applicants for new COVID EIDL loans or advances on January 1, 2022. On May 5, 2022, the SBA announced that the COVID EIDL program was completely out of funds. The SBA stopped processing loan increase requests or requests for reconsideration of previously declined loans on May 6.

28.     The SBA's various COVID-relief programs were plagued by problems that disproportionately impacted small business owners of color.

29.     Media reports show that minority business owners struggled to get small business loans from the government, which had direct impacts on their businesses.[1]

**C.     SBA relied on automatic search results—which it knew to be inaccurate—leading to erroneous determinations of eligibility.**

30.     Beginning in April 2021, the SBA started using the Treasury's DNP APIs ("application programming interface") to search against a number of sources to identify potentially ineligible applications before disbursing COVID EIDL funds.[2]

31.     However, as Mr. Said's denial exemplifies, the SBA does not use a reasonable number of identifiers to perform these searches—such as middle names or birthdates—and the searches frequently return search results that are not connected to the person the SBA is actually investigating.

32.     The SBA is aware that a DNP match cannot definitively determine that an applicant is ineligible to receive a loan.[3]

---

[1] *See* Stacy Cowley, *Minority Entrepreneurs Struggled to Get Small-Business Relief Loans*, N.Y. Times (Apr. 4, 2021) (discussing the Paycheck Protection Program).
[2] Kucharski Memorandum at 1.
[3] *Id.*

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

33.    Indeed, the SBA admitted that it would be improper to rely on the search results alone and that it needed to have loan officers review flagged applications to make final determinations of eligibility.[4]

34.    Nonetheless, SBA relied on the search results returned for Mr. Said and failed to include further identifying information in the search or consider the evidence Mr. Said submitted establishing that he is not on the OFAC sanctions list. The SBA did so despite having more accessible information from the DNP lists—such as Social Security or tax identification numbers—than a member of the public does.

35.    Recent reporting has shown that the SBA approved thousands of loans with signs of fraud early in the pandemic and failed to implement policies requiring actual review of applications by an SBA employee.[5]

**D.    SBA wrongfully rescinded Mr. Said's small business loan because of his national origin.**

36.    Mr. Said is a small business owner living and working in Seattle.

37.    Mr. Said is originally from Somalia. He came to the United States as a child, and later became a naturalized U.S. citizen.

38.    Mr. Said drives for the rideshare companies Uber and Lyft. In 2016, he incorporated his rideshare driving business.

39.    Like many small business owners, Mr. Said's rideshare business was hit hard by the COVID-19 pandemic. As it became unsafe to be in close contacts with others, Mr. Said's business suffered.

40.    When the SBA announced COVID-specific grants and loans, Mr. Said applied so he could support his business. He first applied for an EIDL Advance grant through a program for small businesses in low-income neighborhoods in June 2021. His application was denied

---

[4] *Id.* at 2.

[5] Tony Romm, *U.S. sent $1.3 billion in small business covid aid abroad, raising new fraud fears*, Wash. Post (Sept. 12, 2022); Yeganeh Torbati, *SBA approved loans with signs of fraud early in pandemic, House report says*, Wash. Post (June 14, 2022).

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1  because his business's address was one block away from the designated area near him in South

2  Seattle.

3      41.    Mr. Said then applied for an EIDL loan in July 2021. His application was approved

4  in February 2022. Mr. Said signed and returned a loan agreement for $82,000 on February 11,

5  2022.

6      42.    A few days passed without any word—or money—from the SBA.

7      43.    On February 17, 2022, Mr. Said received a letter rescinding approval for the loan.

8  The letter stated that Mr. Said was not eligible for the loan he had already been approved for

9  because—according to the SBA—he was on a DNP list. A copy of this letter is attached hereto as

10  Exhibit 1.

11      44.    Mr. Said was confused. The letter did not indicate what a DNP list was, or which

12  specific DNP list he was on. As far as he knew, there was no reason for him to be on any list

13  making him ineligible for a government loan.

14      45.    Mr. Said called the SBA every day for two weeks to try to get an explanation. He

15  never got a clear answer as to why his loan had been rescinded.

16      46.    Finally, an SBA representative told Mr. Said that the internal notes on his

17  account indicated that his name had been a "hit" on the OFAC sanctions list. The OFAC list

18  tracks terrorists, criminals, and other individuals with whom the United States is barred from

19  doing business.

20      47.    Mr. Said was shocked, confused, and upset at the fact that he was being accused

21  of being a terrorist.

22      48.    The SBA representative suggested Mr. Said reach out to the agency that

23  managed the OFAC list. Mr. Said called the Department of the Treasury, which manages the

24  OFAC list. He was told by a representative that he should take screen grabs of searches for his

25  name on the OFAC list and send them, along with any identifying documents, to the SBA to

26  rebut its claim that he was on the OFAC list.

27

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

49.     Mr. Said sent the screengrabs of the other "Mohamed Said" hits from the search and copies of his Social Security card and passport to the SBA on February 26, 2022. The screengrabs and documents showed that Mr. Said did not have the same middle name or birthdate as any of the three people on the OFAC search.

50.     The SBA sent Mr. Said a final determination letter on April 22, 2022. Despite the evidence he provided, the letter stated that the SBA had confirmed Mr. Said was on the OFAC list, and that its determination was final and not appealable.

51.     Mr. Said reached out to his representative in Congress, Congresswoman Pramila Jayapal, for help. Congresswoman Jayapal's office reached out to the SBA on his behalf. A few weeks later, a liaison from the SBA to Congress contacted Mr. Said. She said that the SBA had determined that he was not, in fact, on the OFAC list or any other DNP list. But she also said that Mr. Said would not be getting the loan he had been approved for because the EIDL program was out of money.

52.     To date, Mr. Said has not received any federal assistance for his small business, even as ongoing COVID-19 surges and variants have harmed his business.

53.     Being Black, an African immigrant, and Muslim, Mr. Said knows he will not always be treated fairly. But to be wrongfully treated as a terrorist by the United States government—and for the government to refuse to consider his proof that it was wrong—was a new low.

54.     Mr. Said was due to travel overseas to visit family shortly after the SBA said he was a terrorist. He was worried about what could happen at the airport when he tried to leave or return to the United States. Mr. Said continues to worry about whether the SBA's flag will prevent him from leaving or re-entering the country.

55.     Mr. Said suffered considerable anxiety and stress, both due to the precarious position his business has been put in by the SBA's refusal to issue the loan and by the SBA's discriminatory accusations.

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

E.   **SBA's reliance on inadequate and incorrect searches and failure to use or consider other identifying information is unlawful and disproportionately harm business owners like Mr. Said.**

56.   The SBA failed to implement policies and procedures to minimize the known risk of inadequate and inaccurate searches of the DNP lists, leading to discrimination against business owners of Middle Eastern and North African descent like Mr. Said.

57.   By engaging in a policy and practice of using inadequate searches against the DNP lists, the SBA has violated and is violating the ECOA by discriminating against business owners of Middle Eastern and North African descent in lending and credit transactions. 15 U.S.C. § 1691(a)(1).

58.   People with common, non-white names like Mr. Said's are more likely to be erroneously flagged as hits on the DNP lists than people with stereotypically white names.

59.   By way of example, a common stereotypically white name like Mary Smith— without any other identifying information—has zero "hits" on the OFAC list. But "Mohamed Said" has three "hits," none of which are the same person as Plaintiff.

60.   The SBA knew that these searches were not 100% accurate and that human review of the results was needed to ensure that applicants were not wrongfully flagged as ineligible.

61.   Disparate impact against a protected group is sufficient to state a discrimination claim under the ECOA. *See* Official Interpretation of Reg. B, 12 C.F.R. § 1002.4, supp. I, § 1002.4(a)-1 ("Disparate treatment on a prohibited basis is illegal whether or not it results from a conscious intent to discriminate.").

62.   The SBA's reliance on inadequate and incorrect searches of federal DNP lists and its failure to use additional identifying markers or properly consider new evidence provided by the applicant to correct the error, has disproportionately and adversely impacted people of Middle Eastern and North African descent relative to similarly situated non-minorities, in violation of the ECOA.

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

## V.    CAUSES OF ACTION
### FIRST CLAIM FOR RELIEF
**(Violations of 15 U.S.C. §§ 1691 *et seq.* – Disparate Impact Discrimination in Provision of Credit)**

63.    Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

64.    The ECOA prohibits discrimination on the basis of race, color, religion, and national origin in the provision of credit. 15 U.S.C. § 1691(a)(1).

65.    A credit applicant can state either a disparate treatment or a disparate impact discrimination claim under ECOA. *See* Official Interpretations of Reg. B, 12 C.F.R. § 1002.4, supp. I, § 1002.4(a)-1.

66.    Plaintiff is a member of a protected class because he is of Middle Eastern and North African descent.

67.    Plaintiff applied for credit from the SBA.

68.    Plaintiff was qualified for the credit, as evidenced by the SBA's initial approval of his loan application.

69.    Despite being qualified, Mr. Said was denied the loan.

70.    The SBA's practice of determining EIDL eligibility by running searches against the federal DNP lists using only the applicant's first and last name is an outwardly neutral practice.

71.    However, the SBA's policy and practice has a significantly adverse or disproportionate impact on persons of people of Middle Eastern/North African descent like Mr. Said. People of Middle Eastern/North African descent are more likely than white people to have their loans wrongfully denied or rescinded on the basis of an inadequate DNP search.

72.    The SBA has a legitimate business need to ensure that it is not extending loans to people prohibited by law from receiving them. But this need can be achieved as well—if not better—if the SBA did not use inadequate searches, included additional identifiers in its searches (such as middle names or birthdates), properly considered evidence submitted by

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1  applicants like Mr. Said showing that the SBA made a mistake, or had loan officers thoroughly

2  review and investigate flagged applications.

3          73.      The SBA's practice of running inadequate and discriminatory searches against

4  the DNP lists in violation of the ECOA has harmed Mr. Said because he was deprived of a loan

5  for which he was qualified.

6          74.      Mr. Said is suffering and will continue to suffer irreparable injury from the SBA's

7  discriminatory lending practices. He is therefore entitled to injunctive and equitable relief to

8  secure complete and adequate prospective relief and ensure that he is not denied a loan in the

9  future because of the SBA's discriminatory search policies. 15 U.S.C. § 1691e(c).

10         75.      As a result of the SBA's unlawful acts, Plaintiff is also owed actual damages,

11 costs, and attorneys' fees in amounts to be determined at trial. 15 U.S.C. § 1691e(a), (d).

12                              **SECOND CLAIM FOR RELIEF**

13 **(Violations of 15 U.S.C. § 1691(d) – Failure to Provide Adequate Notice of Adverse Action)**

14         76.      Plaintiff realleges and incorporates by reference each and every allegation set

15 forth in the preceding paragraphs.

16         77.      The ECOA requires the SBA to provide a specific statement of reasons, in writing,

17 of an adverse action taken on an applicant's credit application. 15 U.S.C. § 1691(d)(1)-(3).

18         78.      An "adverse action" includes a denial or revocation of credit. 15 U.S.C. §

19 1691(d)(6).

20         79.      The statement of reasons must be specific and indicate the principal reason for

21 the adverse action. 12 C.F.R. § 1002.9(b)(2). The reasons disclosed "must relate to and

22 accurately describe the factors actually considered or scored by a creditor." Official

23 Interpretations of Reg. B, 12 C.F.R. § 1002.9, supp. I, § 1002.9(b)(2)-2.

24         80.      SBA's decision to rescind Mr. Said's loan was an adverse action.

25         81.      Mr. Said was not provided a statement of reasons that contained the specific

26 reasons for the adverse action taken on his application. The letter he received simply stated

27 "W-DNP: Withdraw for DNP." The letter said his name matched a name on a DNP list, but did

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1  not say what a DNP list was, or why he was on the list. It did not say which of the many DNP

2  lists his name was allegedly on, despite saying that the letter "described below" why he had

3  been flagged. This is insufficient notice under the ECOA.

4      82.    The SBA failed to provide Mr. Said with a specific statement of the reasons for

5  the adverse action taken on his credit application.

6      83.    Mr. Said is now suffering and will continue to suffer irreparable injury from the

7  SBA's failure to provide adequate notice of the reasons adverse action was taken on his

8  application. He is therefore entitled to injunctive and equitable relief to secure complete and

9  adequate prospective relief and ensure that he is not denied a loan in the future because of the

10  SBA's inadequate notice policies. 15 U.S.C. § 1691e(c).

11     84.    As a result of the SBA's unlawful acts, Plaintiff is owed actual damages, costs,

12  and attorneys' fees in amounts to be determined at trial. 15 U.S.C. § 1691e(a), (d).

13                        **VI.    PRAYER FOR RELIEF**

14     Wherefore, Plaintiff Mohamed Said prays for relief, including judgment on each and

15  every cause of action alleged herein and for recovery of all special and general damages, as

16  follows:

17      A.    A declaration that Defendant has violated the Equal Credit Opportunity Act;

18      B.    Injunctive relief including:

19          1)    An order halting Defendant's unlawful practices;

20          2)    An order requiring Defendant to institute DNP search procedures that do

21                not have a disparate impact on Mr. Said, including by requiring additional

22                training in optimal search procedures, adding further identifying

23                information to searches such as middle names and birthdates to prevent

24                erroneous "hits," and requesting or accepting identifying information

25                from applicants when a person's name is a "hit" on a DNP list; and

26      C.    For actual damages in the amount of the loan Mr. Said was wrongfully denied;

27

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF - 12

1    D.    For actual damages attributable to the SBA's failure to provide adequate notice

2  of the reasons his application was denied;

3    E.    For actual damages for Mr. Said's emotional distress caused by Defendant's

4  discriminatory policies and practices;

5    F.    For attorneys' fees and costs of suit pursuant to applicable law, including but not

6  limited to 15 U.S.C. § 1691e(d);

7    G.    Prejudgment and post-judgment interest; and

8    H.    Such other legal and equitable relief as the Court deems just and proper.

9                           **VII.    JURY DEMAND**

10    Plaintiff hereby requests a trial by jury on all issues so triable.

11

12    RESPECTFULLY SUBMITTED AND DATED this 27th day of January, 2023.

13                                    TERRELL MARSHALL LAW GROUP PLLC

14
                                      By:   /s/ Jennifer Rust Murray, WSBA #36983
15                                          Jennifer Rust Murray, WSBA #36983
                                            Email: jmurray@terrellmarshall.com
16

17                                    By:   /s/ Beth E. Terrell, WSBA #26759
                                            Beth E. Terrell, WSBA #26759
18                                          Email: bterrell@terrellmarshall.com

19
                                      By:   /s/ Benjamin M. Drachler, WSBA #51021
20                                          Benjamin M. Drachler WSBA #51021
                                            Email: bdrachler@terrellmarshall.com
21                                          936 North 34th Street, Suite 300
                                            Seattle, Washington 98103-8869
22                                          Telephone: (206) 816-6603
                                            Facsimile: (206) 319-5450
23

24                                    *Attorneys for Plaintiff*

25

26

27

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com